Matter of Lamont v Superior Ambulance Serv. Inc. (2024 NY Slip Op 05854)

Matter of Lamont v Superior Ambulance Serv. Inc.

2024 NY Slip Op 05854

Decided on November 21, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 21, 2024

CV-23-0874
[*1]In the Matter of the Claim of Dalena Lamont, as Widow of Thomas Lamont, Deceased, Respondent,
v
Superior Ambulance Service Inc. et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:October 16, 2024

Before:Aarons, J.P., Reynolds Fitzgerald, Fisher, McShan and Mackey, JJ.

Habberfield Kaszycki, LLP, Buffalo (Eugene W. Lane of counsel), for appellants.
Law Firm of Alex Dell, PLLC, Albany (Edward Obertubbesing of counsel), for Dalena Lamont, respondent.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for Workers' Compensation Board, respondent.

Aarons, J.P.
Appeal from a decision of the Workers' Compensation Board, filed April 17, 2023, which ruled, among other things, that claimant is entitled to receive death benefits based upon decedent's average weekly wage at the time of his disablement.
Claimant's spouse (hereinafter decedent) participated in the World Trade Center rescue, recovery and clean-up operations following the terrorist attacks of September 11, 2001. Several years later, on September 28, 2017, decedent was diagnosed with rectal cancer and, after registering with the Workers' Compensation Board, filed a claim for workers' compensation benefits pursuant to Workers' Compensation Law article 8-A alleging injuries sustained on September 20 and 21, 2001 while providing emergency medical services at Ground Zero. A Workers' Compensation Law Judge (hereinafter WCLJ) established decedent's lifetime claim for an occupational disease (rectal cancer), set the date of disablement as September 28, 2017 (the date of decedent's diagnosis), calculated decedent's average weekly wage to be $1,787.05 and awarded benefits. Safety National Casualty Corp. was determined to be the employer's workers' compensation carrier and thus responsible for decedent's lifetime claim.
Decedent died in March 2022 at the age of 49, and claimant timely filed a claim for death benefits alleging that decedent died from metastatic rectal cancer resulting from exposure to toxins at Ground Zero (see Workers' Compensation Law § 28; Matter of Garcia v WTC Volunteer, 211 AD3d 1264, 1266 [3d Dept 2022], lv granted 42 NY3d 905 [2024]). By decision filed November 21, 2022, the WCLJ found that, because decedent's "death [was] consequential to the conditions established on the underlying lifetime claim, . . . the proper carrier for the death claim [was] the carrier on the lifetime claim," i.e., Safety National. The WCLJ similarly concluded that the proper average weekly wage on the death claim was the average weekly wage established on the lifetime claim ($1,787.05). By separate decision filed December 28, 2022, the WCLJ awarded death benefits to claimant. The Board affirmed and ruled, as relevant here, that claimant is entitled to receive death benefits based upon decedent's average weekly wage at the time of his disablement and that Safety National is the carrier liable for the consequential death claim. This appeal by the employer and Safety National (hereinafter collectively referred to as the carrier) ensued.
We affirm. Decedent's lifetime claim was established for an occupational disease and, "[i]n occupational disease cases, the disablement of the employee as a result of the disease is treated as the occurrence of an accident for purposes of determining the date of injury" (Matter of Andres v Occidental Chem., 43 AD3d 1245, 1246 [3d Dept 2007]; see Workers' Compensation Law § 38; Matter of Reid v National Grid, 222 AD3d 1119, 1121 n 1 [3d Dept 2023]; Matter of Mlodozeniec v Trio Asbestos Removal Corp., 66 AD3d 1174, 1175 [3d Dept [*2]2009]). In other words, "the term 'accident' is synonymous with 'disablement' in the context of occupational diseases" (Matter of Krausa v Totales Debevoise Corp., 84 AD3d 1545, 1546 [3d Dept 2011]; see generally Matter of Lesperance v Gulf Oil Co., 287 AD2d 839, 840 [3d Dept 2001], lv dismissed 98 NY2d 647 [2022]). As a general proposition, "[t]he Board is afforded great latitude in setting the date of disablement, and its resulting determination, if supported by substantial evidence, will not be disturbed" (Matter of Reid v National Grid, 222 AD3d at 1120 [internal quotation marks and citations omitted]). However where, as here, the injured worker has a qualifying condition that is causally-related to his or her participation in the World Trade Center rescue, recovery and clean-up operations, the Board is statutorily required to "determine the date of disablement that is most beneficial to the [injured worker]" (Workers' Compensation Law § 164). Although there is no question that "claims for disability and death benefits are legally distinct . . . , death is not a new injury or accident, but rather a new claim consequentially related to the original injury" (Matter of Krausa v Totales Debevoise Corp., 84 AD3d at 1546-1547 [internal quotation marks, brackets and citations omitted]; see Employer: Howland Hook Leasing, 2017 WL 2275711, *3, 2017 Wrk Comp LEXIS 7675, *5-6 [WCB No. G140 1473, May 22, 2017]).
Given those principles, and despite the carrier's protestations, we decline to disturb the Board's determination fixing decedent's date of disablement as September 28, 2017 — the date that he was diagnosed with rectal cancer. Moreover, because decedent's death causally relates back to his lifetime claim (see Workers' Compensation Law § 2 [7], [8]; see generally Matter of Misquitta v Getty Petroleum, 150 AD3d 1363, 1365 [3d Dept 2017]), substantial evidence supports the Board's finding that Security National remains liable for decedent's consequential death resulting therefrom (see Commissioners of State Ins. Fund v Hallmark Operating, Inc., 61 AD3d 1212, 1213 [3d Dept 2009]; see generally Matter of Misquitta v Getty Petroleum, 150 AD3d at 1365; Employer: New York Blood Center Inc., 2022 WL 1125121, *3, 2022 Wrk Comp LEXIS 2041, *6 [WCB No. G233 8819, Apr. 7, 2022]).
As for the computation of claimant's death benefits, "the calculation of death benefits is based upon the average weekly wage on the date of accident or the date of disablement" (Matter of Mangan v Try-It Distrib. Co., Inc., 140 AD3d 1568, 1569 [3d Dept 2016], citing Workers' Compensation Law § 14; accord Matter of Reid v National Grid, 222 AD3d at 1121), and "disablement from an occupational disease is treated as the happening of the accident" (Matter of Reid v National Grid, 222 AD3d at 1121 n 1 [internal quotation marks, brackets and citation omitted]; see Matter of House v International Talc Co., 261 AD2d 687, 688 n 1 [3d Dept 1999]). Where, as here, the date of disablement has [*3]been determined, it is that date — and not the date of decedent's death — that should be used for determining decedent's average weekly wage (compare Matter of Reid v National Grid, 222 AD3d at 1121-1122, with Matter of Lesperance v Gulf Oil Co., 287 AD2d at 840). Applying these rules, substantial evidence supports the Board's calculations of claimant's death benefits based upon decedent's average weekly wage as of the date of his disablement. The carrier's remaining arguments, to the extent not specifically addressed, have been examined and found to be without merit.
Reynolds Fitzgerald, Fisher, McShan and Mackey, JJ., concur.
ORDERED that the decision is affirmed, with costs to claimant.